MARY REANEY-GATES,     \*     NO. 2020-CA-0298
WIFE OF/AND MARK GATES,
CARLA P. BUBACZ, WIFE     \*
OF/AND REX BUBACZ          COURT OF APPEAL
        \*
VERSUS               FOURTH CIRCUIT
        \*
TEODORO RIVERA         STATE OF LOUISIANA
MENDOZA, ICM INSURANCE    \* \* \* \* \* \* \*
COMPANY, AND THE
HANOVER AMERICAN
INSURANCE COMPANY


APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2011-10095, DIVISION "F"
Honorable Christopher J. Bruno, Judge
\* \* \* \* \* \*
**JUDGE SANDRA CABRINA JENKINS**
\* \* \* \* \* \*

(Court composed of Chief Judge James F. McKay, III, Judge Daniel L. Dysart, Judge Sandra Cabrina Jenkins)

John H. Hughes
ALLEN & GOOCH,
A Law Corporation
2000 Kaliste Saleem Rd, Suite 400
P. O. Box 81129
Lafayette, LA 70598-1129

Jason A. Camelford
LAW OFFICES OF ROBERT D. FORD
111 Veterans Blvd., Suite 1670
Metairie, LA 70005

COUNSEL FOR PLAINTIFF/APPELLEE

Kevin O'Bryon
Janell McFarland-Forges
O'BRYON & SCHNABEL, APLC
935 Gravier Street, Suite 900
New Orleans, LA 70112

COUNSEL FOR DEFENDANT/APPELLANT

**REVERSED**
**FEBUARY 3, 2021**

This is an insurance coverage dispute arising from a 2010 automobile accident. Defendant/appellant Government Employees Insurance Company ("GEICO") appeals the trial court's March 9, 2019 judgment granting summary judgment in favor of defendant/appellee Hanover American Insurance Company ("Hanover"), and denying GEICO's motion for summary judgment. For the reasons that follow, we reverse the trial court's judgment and dismiss Hanover's claims against GEICO, with prejudice.

## FACTUAL AND PROCEDURAL BACKGROUND

On July 2, 2010, GEICO issued a renewal auto insurance policy 0182-71-06-08 to Mark F. Gates ("Mr. Gates") and Mary Reaney-Gates ("Mrs. Gates") (collectively, the "Gates"), effective May 3, 2010 to November 3, 2010. Previously, on September 30, 1998, Mr. Gates, the named insured, had executed a UM rejection form. Mr. Gates had renewed the GEICO policy multiple times, dating back before 1998. Each of the renewals provided $300,000 per person/per accident limits for bodily injury liability, and rejected UM coverage. When the GEICO renewal policy was issued in 2010, all that was required to validly reject UM coverage was for the named insured to have rejected the coverage on a

1

commissioner-prescribed form in connection with a predecessor policy, as long as the policy limits had not changed in the interim.[1]

In 2011, the Gates filed suit against the alleged at-fault driver, Teodoro Rivera Mendoza ("Mendoza"), and his liability insurer ICM Insurance Company ("ICM"); and Hanover, the UM insurer of Carla P. Bubacz, who was Mrs. Gates' guest passenger. Years later, Hanover asserted that the GEICO liability policy covering the Gates' vehicle provided UM coverage that primed Hanover's coverage. In 2015, the Gates amended their petition to add a claim against GEICO, which allegedly provided UM coverage to the Gates. When Mendoza's liability insurer, ICM, became insolvent, it was replaced by the Texas Property and Casualty Insurance Guaranty Association ("Texas Property").

In 2019, GEICO and Hanover filed cross motions for summary judgment regarding the existence of UM coverage. Texas Property joined in Hanover's motion for summary judgment and opposed GEICO's motion for summary judgment. After a hearing on the cross-motions, the trial court signed a March 9, 2020 judgment granting Hanover's motion for summary judgment and denying GEICO's motion for summary judgment. In the judgment, the trial court reformed the automobile policy issued by GEICO to provide the plaintiffs with uninsured motorist ("UM") bodily injury coverage in an amount equal to the limits of liability for bodily injury arising from the September 27, 2010 auto accident. The trial court further decreed that the GEICO insurance policy provided the primary layer

---

[1] *See* La. R.S. 22:1295(1)(a)(ii): "Such rejection, selection of lower limits, or selection of economic-only coverage shall be made on a form prescribed by the commissioner of insurance . . . . Any changes to an existing policy, regardless of whether these changes create new coverage, except changes in the limits of liability, do not create a new policy and do not require the completion of new uninsured motorist selection forms."

2

of uninsured motorist coverage in connection with the plaintiffs' claims. GEICO appealed the judgment.

## DISCUSSION

**Standard of Review**

We apply a *de novo* standard of review in examining a trial court's ruling on summary judgment. *Carrero v. Mandina's*, 19-0158, p. 2 (La. App. 4 Cir. 8/7/19, -- So.3d --, 2019 WL 3719552, *3, *writ denied*, 19-01554 (La. 11/25/19). Accordingly, we use the same criteria that govern a trial court's consideration of whether summary judgment is appropriate. *Id.*

"[A] motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(A)(3).

**Burden of Proof**

La. C.C.P. art. 966(D)(1) governs the mover's burden on a motion for summary judgment:

> The burden of proof rests with the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law.

In GEICO's motion for summary judgment, it concedes that it issued a policy to the Gates that was in full force and effect on September 27, 2010. GEICO contends that the policy was continuously renewed through 2010 without

3

any changes to the bodily injury limits. According to GEICO, the policy was issued with UM coverage rejected on all renewals beginning on or after November 30, 1998 based on the UM rejection form executed by Mr. Gates on September 30, 1998. GEICO contends that the law in effect at the time of the accident was La. R.S. 22:1406(D)(1)(a)(ii)[2], which provided that a UM waiver form is only required when the named insured changes the limits of liability, and that there had been no such change. GEICO argues that because there had not been a change in the limits of liability, the UM waiver signed by Mr. Gates was valid on September 27, 2010. It follows, GEICO avers, that the Gates had no UM coverage under the GEICO policy at the time of the accident.

Texas Property argues that the rejection of uninsured motorist coverage in September 1998 did not remain valid after the UM laws were later amended. Texas Property contends that the amendment to La. R.S. 22:1406(D)(1)(a)(ii), effective August 15, 1999, which was repealed in 2003, provided that any waiver form executed before the effective date of the amendment would be valid only until the policy's renewal date. The statute provided that new rejection forms must be executed after its effective date of August 15, 1999. Thus, all otherwise valid UM rejection forms would be valid only until the first policy renewal following the effective date of Act 732, and then new UM rejection forms were required to be executed. *See Stewart v. Hare*, 42,972, p. 4 (La. App. 2 Cir. 2/20/08), 976 So.2d 856, 858. According to Texas Property, because Mr. Gates did not sign a new waiver of the renewal on November 3, 1999, the Gates had UM coverage to the

---

[2] The original UM statute was originally numbered La. R.S. 22:1406(D). It was redesignated as La. R.S. 22:680 by 2003 La. Acts No. 456, § 3. It has since been renumbered to its present iteration, La. R.S. 22:1295, by 2008 La. Acts No. 415, § 1, eff. Jan. 1, 2009. *Barras v. Cardinal Servs., LLC*, 19-530, p. 9 n.2 (La. App. 3 Cir. 4/1/20), 297 So.3d 877, 883.

limits of liability of their policy at every renewal thereafter, and were provided UM coverage at the time of the automobile accident on September 27, 2010.

Likewise, Hanover contends that the legislature required, in its 1999 amendment, that all policy holders execute a new valid UM rejection upon renewal of their policies. Hanover asserts that GEICO had no valid UM rejection attached to the policy in effect when the accident occurred in September 2010. In essence, Hanover argues that Mr. Gates' 1998 rejection of UM coverage was invalidated by the 1999 law, and that once invalid, it remained invalid even though the legislature repealed the 1999 law in 2003. Hanover cites no legal authority for its "once invalid, always invalid" contention.

We reject Hanover's contention that once an initially valid UM rejection became invalid due to a change in the law, it was forever invalid even though the law was changed to restore the validity of the rejection.

Based on our *de novo* review of the facts and the law, we conclude that under the law in effect at the time of the accident, all that was required to validly reject UM coverage was for the named insured to have rejected the coverage on a commissioner-prescribed form in connection with a predecessor policy, as long as the limits of liability had not changed in the interim. Mr. Gates had no UM coverage from GEICO in 2010 because he executed a rejection of UM coverage form in 1998, and the GEICO policy was continuously renewed thereafter without a change in the limits of bodily injury.

In an alternative argument, Hanover contends that the 1999 listing of the Gates' teenage daughter as a driver on the GEICO policy constituted a change that created a "new" policy, which required a "new" UM rejection form. We disagree. The GEICO policy defines "insured" to include resident relatives of the named

5

insured. In *Daigle v. Allstate Ins. Co.*, 96-1352 (La. App. 4 Cir. 3/5/97), 690 So.2d 261, this Court found that the addition of an insured person under the original policy was not a significant enough change to convert the renewal policy into a new policy because the insured person had already been insured under the policy as a passenger. Here, because the Gates' teenage daughter was already a resident relative who had insured status under the GEICO policy, listing her as an additional driver on the Policy did not expand the policy's coverage. As stated in *Daigle*:

> Although the addition of another insured person to a policy can constitute a truly material change, Edgar Daigle, III was already an insured person under the original policy. The alteration of his status, from an insured passenger to a driver is not significant enough to convert the renewal policy into a new policy.

*Id.*, 96-1352, p. 3, 690 So.2d at 262-63.

This alternative argument has no merit.

Accordingly, we find that the trial court erred when it granted Hanover's motion for summary judgment, reformed the GEICO policy to provide UM coverage for the Gates' September 2010 automobile accident, and declared that the GEICO policy provided the primary layer of uninsured motorist coverage. The trial court also erred when it denied GEICO's motion for summary judgment.

## CONCLUSION

No UM coverage was in effect under the Gates' GEICO policy on September 27, 2010, the date of the accident. The UM waiver executed by Mr. Gates in 1998 was still valid on that date. Further, the alteration of the Gates' daughter's status from an insured passenger to a driver does not create a "new" policy that requires a new UM waiver form. Accordingly, we reverse the judgment granting Hanover's motion for summary judgment, and we reverse the judgment

6

denying GEICO's motion for summary judgment. Hanover's claims against GEICO are dismissed with prejudice.

**REVERSED**